1  Ryan Spear, WSBA No. 39974 (*pro hac vice*)
   RSpear@perkinscoie.com
2  PERKINS COIE LLP
   1201 Third Avenue
3  Suite 4800
   Seattle, WA  98101-3099
4  Telephone: 206.359.8000
   Facsimile: 206.359.9000
5
   Brian P. Hennessy, Bar No. 226721
6  BHennessy@perkinscoie.com
   PERKINS COIE LLP
7  3150 Porter Drive
   Palo Alto, CA  94304-1212
8  Telephone:  650.838.4300
   Facsimile:  650.838.4350
9
   Attorneys for Facebook, Inc.
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

| | |
|---|---|
| 15  FACEBOOK, INC., a Delaware corporation, | Case No. 4:11-cv-03619-YGR |
| 16                      Plaintiff, | **FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS** |
| 17       v. | |
| 18  CYBER2MEDIA, INC., ET AL., | Date:  Tuesday, March 27, 2012<br>Time:  2:00 p.m. |
| 19                      Defendants. | Judge:  Hon. Yvonne Gonzalez Rogers |

20
                    **NOTICE OF MOTION AND**
21          **MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS**

22  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23       PLEASE TAKE NOTICE that at 2:00 p.m. on March 27, 2012, or at the earliest

24  practicable time thereafter on this Court's schedule, in the courtroom of the Honorable Yvonne

25  Gonzalez Rogers, 1301 Clay Street, Oakland, California, 94612, Plaintiff Facebook, Inc.

26  ("Facebook") will and hereby does move for an Order authorizing service by alternative means

27  on certain defendants.

28

---

60406-0005/LEGAL22833830.2           1           NOTICE OF MOTION TO SERVE
                                                 DEFENDANTS BY ALTERNATIVE MEANS

1    This Motion is based on this Notice of Motion and Motion, the Memorandum of Points
2 and Authorities below, the supporting Declaration of Ryan Spear, the Court's files in this
3 action, the arguments of counsel, and any other matter the Court may properly consider.

5 DATED: February 17, 2012                           Respectfully submitted,
6                                                    **PERKINS COIE LLP**

8                                                    By: /s/ Ryan Spear
                                                         Ryan Spear, Wash. Bar No. 39974
9                                                        (*pro hac vice*)
                                                         RSpear@perkinscoie.com

10                                                   Attorneys for Facebook, Inc.

---

60406-0005/LEGAL22833830.2            -2-                NOTICE OF MOTION TO SERVE
                                                         DEFENDANTS BY ALTERNATIVE MEANS

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 1

    A.    Procedural History ..................................................................................... 1

    B.    Facebook's Efforts to Locate, Contact, and Serve the Subject Defendants ......................................................................................... 2

III.  ARGUMENT ......................................................................................................... 4

    A.    The Court Should Allow Facebook to Serve the Foreign Subject Defendants by Email Under Federal Rule of Civil Procedure 4(f)(3) ....................................................................................... 4

        1.    Service by email is reasonably calculated to provide actual notice of this suit to the Foreign Subject Defendants ....................................................................................... 4

        2.    Service by email is not prohibited by any relevant international agreement .................................................................. 7

    B.    The Court Should Allow Facebook to Serve the Domestic Subject Defendants by Email Under Federal Rule of Civil Procedure 4(e)(1) ....................................................................................... 9

IV.  CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aevoe Corp. v. Pace*
  2011 WL 3904133 (N.D. Cal. Sep. 6, 2011) .................................................................... 10

*Balsam v. Tucows*
  627 F.3d 1158 (9th Cir. 2010) .......................................................................................... 2

*Bank Julius Baer & Co. Ltd v. Wikileaks*
  2008 WL 413737 (N.D. Cal. Feb. 13, 2008) .................................................................... 6

*Brockmeyer v. May*
  383 F.3d 798 (9th Cir. 2004) ............................................................................................ 4

*Collins v. Doe*
  2010 WL 4954727 (S.D. Tex. Nov. 30, 2010) ................................................................ 10

*craigslist, Inc. v. Meyer*
  No. CV 09-4739 SI, Dkt. 29 (N.D. Cal. Jul. 26, 2010) .................................................... 9

*craigslist, Inc. v. Temple*
  No. CV 09-04738 JW, Dkt. 21 (N.D. Cal. May 20, 2010) ............................................... 6

*craigslist, Inc. v. Troopal Strategies, Inc.*
  No. CV 09-04741 JW, Dkt. 37 (N.D. Cal. Nov. 24, 2010) ........................................... 6, 9

*D.R.I., Inc. v. Dennis*
  2004 WL 1237511 (S.D.N.Y. June 3, 2004) .................................................................. 11

*Gucci America, Inc. v. Huoqing*
  2011 WL 31191 (N.D. Cal. Jan. 3, 2011) ......................................................................... 5

*Gurung v. Malhotra*
  2011 WL 5920766 (S.D.N.Y. Nov. 22, 2011) .................................................................. 6

*Igloo Products Corp. v. Thai Welltex Int. Co., LTD.*
  379 F. Supp. 2d 18 (D. Mass. 2005) ................................................................................. 9

*Juniper Networks, Inc. v. Bahattab*
  2008 WL 250584 (D.D.C. Jan. 30, 2008) ......................................................................... 6

*Liberty Media Holdings, LLC v. Vinigay.com*
  2011 WL 810250 (D. Ariz. Mar. 3, 2011) ................................................................ 4, 7, 9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Power Corp. of Canada v. Power Financial*
  2009 WL 982750 (M.D. Pa. Apr. 13, 2009) .................................................................... 10

*Rio Props., Inc. v. Rio Int'l Interlink*
  284 F.3d 1007 (9th Cir. 2002) ............................................................................... 4, 5, 7

*Tishman v. The Associated Press*
  2006 WL 288369 (S.D.N.Y. Feb. 6, 2006) ..................................................................... 10

*Tracfone Wireless, Inc. v. Unlimited PCS Inc.*
  2012 WL 169762 (S.D. Fla. Jan. 11, 2012) ...................................................................... 8

*United States v. Distribuidora Batiz CGH, S.A. De C.V.*
  2011 WL 1561086 (S.D. Cal. Apr. 21, 2011) ................................................................... 8

*Williams-Sonoma Inc. v. Friendfinder, Inc.*
  2007 WL 1140639 (N.D. Cal. Apr. 17, 2007) ............................................................... 6, 8

**FEDERAL STATUTES**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
  Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ................................ 8

**CALIFORNIA STATUTES**

Cal. Code Civ. P. § 415.50(b) ................................................................................... 10

Cal. Code Civ. P. § 413.30 ....................................................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(e) ................................................................................................. 10

Fed. R. Civ. P. 4(e)(1) ................................................................................... 9, 10, 11

Fed. R. Civ. P. 4(f) ................................................................................................... 4

Fed. R. Civ. P. 4(f)(1) ............................................................................................... 4

Fed. R. Civ. P. 4(f)(2) ............................................................................................... 4

Fed. R. Civ. P. 4(f)(3) ............................................................................................... 4

Fed. R. Civ. P. 4 ...................................................................................................... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Hague Conf. on Private Int'l Law, Status Table 14,
  http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Feb. 14, 2012) .................................................................................................................. 8

Internet Corp. for Assigned Names and Numbers, Registrar Accreditation Agreement
  § 3.7.7.1 (May 21, 2009), *available at* http://www.icann.org/en/registrars/ra-agreement-21may09-en.htm#3 ................................................................................. 2, 6

N.Y. R. Civ. P. 308(5) ........................................................................................................ 10

Pa. R. Civ. P. 430(a) .......................................................................................................... 10

Tex. R. Civ. P. 106(b) ....................................................................................................... 10

U.S. Dep't of State, Anguilla Country Specific Information,
  http://travel.state.gov/travel/cis_pa_tw/cis/cis_1107.html#country (last visited Feb. 14, 2012) .................................................................................................................. 8

U.S. Dep't of State, Background Note: Antigua and Barbuda,
  http://www.state.gov/r/pa/ei/bgn/2336.htm (last visited Feb. 14, 2012) ................... 8

Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1134 (3d ed.) ........................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendants are typosquatters. They use Internet domain names—like faceboko.com—that are confusingly similar to Facebook's trademark, **FACEBOOK**, to trick Facebook users and potential users into visiting defendants' websites. Those websites, in turn, misappropriate Facebook's trademarks and use other deceptive tactics to suggest, falsely, that the websites and the commercial activities carried on there are connected to Facebook. Defendants make money by collecting personal information from unwary consumers, enticing consumers to buy products or services on their deceptive websites, and other misleading conduct.

Facebook has dismissed more than 20 defendants and served 12 of the remaining 26 named defendants. But despite Facebook's best efforts, and due mainly to defendants' deliberate attempts to conceal their identities, Facebook has been unable to serve 14 named defendants. Facebook respectfully requests that the Court allow Facebook to serve those 14 defendants via email because email will provide the defendants with actual notice of this case (in the unlikely event that they are not already aware of it); because email service is not prohibited by any international agreement; and because multiple courts have approved email service in similar circumstances.

## II. BACKGROUND

**A. Procedural History**

Facebook filed its original Complaint on July 22, 2011. Based on its initial investigation, Facebook named 10 defendants with domestic addresses and 15 defendants with foreign addresses. *See* Dkt. 1. Facebook voluntarily dismissed defendant Ryan Johnson, a domestic defendant, on November 17, 2011. *See* Dkt. 28. On December 12, 2011, after conducting further investigation, Facebook filed its First Amended Complaint. The First Amended Complaint named 15 domestic defendants and 32 foreign defendants. *See* Dkt. 36. On February 14, 2012, Facebook voluntarily dismissed without prejudice 18 foreign defendants. *See* Dkt. 60. Facebook thereafter voluntarily dismissed foreign defendant Mark

60406-0005/LEGAL22833830.2  1  MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS

1   Risi, *see* Dkt. 62, and domestic defendants Daniel Negari and Cyber2Media, Inc., *see* Dkt. 61.

2   Thus, 26 named defendants remain in this suit—13 of them foreign and 13 of them domestic.[1]

3   This motion addresses the 10 foreign defendants (collectively, the "Foreign Subject

4   Defendants") and the 4 domestic defendants (collectively, the "Domestic Subject Defendants")

5   who have managed to evade service.

**B.   Facebook's Efforts to Locate, Contact, and Serve the Subject Defendants**

Facebook details its efforts to locate, contact, and serve each of the Subject Defendants in the contemporaneously filed Declaration of Ryan Spear ("Spear Decl."). To summarize, Facebook attempted to serve many of the Subject Defendants personally, only to learn that those defendants were either intentionally evading service or that the addresses they provided were inaccurate or otherwise unsuitable for service. *See* Spear Decl. ¶¶ 46-49 (Karrie-Lee Karreman); *id*. ¶ 87-88 (PPX.com); *id*. ¶ 100-03 (Elise Petri); *id*. ¶ 158-65 (Reggie Bush); *id*. ¶ 174-76 (Gilend API), *id*. ¶ 185-89 (Stormwest Corp.); *id*. ¶ 198-99 (Tomato, Inc.). In addition, when contact information for the Subject Defendants was available, Facebook attempted to contact them via postal mail, email, and telephone—usually on multiple occasions. *See, e.g.*, *id*. ¶¶ 5-17 (describing efforts to locate, contact, and serve Cleanser Products). Facebook also took other extraordinary steps, including contacting certain Subject Defendants' counsel in other matters to see if counsel would accept service, *see id*. ¶¶ 56-57 (Karreman); *id*. ¶¶ 111-12 (Petri), and asking registrars to remove "privacy protection" from individuals' Whois records so that Facebook could identify and serve those individuals, *see id*. ¶¶ 32-34 (Intercontinental Domain, Inc.); *id*. ¶¶ 196-97 (Tomato, Inc.).[2]

---

[1] Facebook's First Amended Complaint also identifies 45 Doe Defendants—that is, unknown individuals who used certain domain names to engage in typosquatting schemes. Facebook has identified the vast majority of the 119 original Doe Defendants, and its investigation into the identities of the remaining 45 Doe Defendants is ongoing. *See* Spear Decl. ¶ 206.

[2] All domain name registrars are required to provide accurate contact information when they register domain names, and registrars are required to provide that information to the appropriate registries so that the information can be made publicly available. *See* Internet Corp. for Assigned Names and Numbers, Registrar Accreditation Agreement § 3.7.7.1 (May 21, 2009), *available at* http://www.icann.org/en/registrars/ra-agreement-21may09-en.htm#3. When registrants want to hide their identities from public view, they often use so-called "privacy-protection services." Those services place their contact information in the Whois records of their customers' domain names, effectively

For the Court's convenience, Tables 1 and 2 provide an overview of Facebook's service efforts with respect to the Subject Defendants.

### Table 1: Foreign Subject Defendants

| Defendant | Attempted Personal service | Postal mail | Email | Telephone | Result |
|---|---|---|---|---|---|
| Cleanser Products | | ✓ | ✓ | ✓ | Invalid address/no response |
| Counter Balance Enterprises Ltd. | | ✓ | ✓ | ✓ | Invalid address/email response – declined to accept or waive service |
| Intercontinental Domain, Inc. | | ✓ | ✓ | | Invalid address/postal response – declined to accept or waive service |
| Karrie-Lee Karreman | ✓ | ✓ | ✓ | ✓ | Invalid address/no response/counsel declined to accept service |
| Mackrooner Ltd. | | ✓ | ✓ | ✓ | Invalid address/no response |
| Newgate Services/ SMTM Enterprises | | ✓ | ✓ | ✓ | Invalid address/no response |
| PPX.com | ✓ | ✓ | ✓ | | No response |
| Elise Petri | ✓ | ✓ | ✓ | ✓ | Invalid address/no response/counsel declined to accept service |
| Pioneer Enterprises Ltd. | | ✓ | ✓ | ✓ | Invalid address/email response – declined to accept or waive service |
| YourTick | | ✓ | ✓ | ✓ | Invalid address/email response – declined to accept or waive service |

### Table 2: Domestic Subject Defendants

| Defendant | Attempted Personal service | Postal mail | Email | Telephone | Result |
|---|---|---|---|---|---|
| Reggie Bush | ✓ | ✓ | ✓ | ✓ | Invalid address/no response |
| Gilend API | ✓ | ✓ | ✓ | ✓ | Invalid address/no response |
| Stormwest Corp. | ✓ | ✓ | ✓ | ✓ | Invalid address/no response |
| Tomato, Inc. | ✓ | ✓ | ✓ | ✓ | Invalid address/no response |

Despite the extensive efforts reflected in Tables 1 and 2, the Subject Defendants continue to avoid service—even though it appears that many if not all of them have actual knowledge of this lawsuit. Indeed, several Subject Defendants have corresponded with counsel

---

preventing the public from discovering who actually owns privacy-protected domain names. *See, e.g.*, *Balsam v. Tucows*, 627 F.3d 1158, 1160 & n.1 (9th Cir. 2010).

for Facebook during the pendency of this case, but declined to accept or waive service. *See id.* ¶¶ 25-27 (Counter Balance Enterprises Ltd.); *id.* ¶¶ 35-37 (Intercontinental Domain, Inc.); *id.* ¶¶ 122-24 (Pioneer Enterprises Ltd.); *id.* ¶¶ 147-53 (YourTick).

### III. ARGUMENT

**A. The Court Should Allow Facebook to Serve the Foreign Subject Defendants by Email Under Federal Rule of Civil Procedure 4(f)(3)**

Alternative service on the 10 Foreign Subject Defendants is appropriate. Federal Rule of Civil Procedure 4 permits several methods of service on foreign individuals, including service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). In other words, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id.*; *see also Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004). Thus, as one leading treatise explains, the "use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief." Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1134 (3d ed.).

In evaluating a motion to authorize service by alternative means on a foreign defendant, courts consider whether the requested means of service is (1) "reasonably calculated to provide actual notice" to the defendant, and (2) not prohibited by an international agreement. *Rio Props.*, 284 F.3d at 1014, 1016; *see also Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 810250, at *2 (D. Ariz. Mar. 3, 2011) ("Under Rule 4(f)(3), a method of service must comport with constitutional notions of due process and must not violate any international agreement."). Both conditions are met in this case.

### 1. Service by email is reasonably calculated to provide actual notice of this suit to the Foreign Subject Defendants.

To satisfy the constitutional requirement of due process, an alternative method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props.*, 284 F.3d at 1016. Email fits that bill. That is especially true in cases like this one in which defendants conduct their business online and rely heavily on electronic communications.

Nine years ago, the Ninth Circuit recognized that email is a reliable method of alternative service, particularly when used to serve defendants who "embrace[] the modern e-business model and profit[] from it":

> [W]e conclude not only that service of process by email was . . . reasonably calculated to apprise [defendant] of the pendency of the action and afford it an opportunity to respond [but also that] it was the method of service most likely to reach [defendant].
>
> . . .
>
> Although communication via email and over the Internet is comparatively new, [it] has been zealously embraced within the business community. [Defendant] particularly has embraced the modern e-business model and profited immensely from it. *In fact, [defendant] structured its business such that it could be contacted only via its email address.*
>
> . . .
>
> [W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process. Certainly in this case, it was a means reasonably calculated to apprise [defendant] of the pendency of the lawsuit, and the Constitution requires nothing more.

*Rio Props.*, 284 F.3d at 1017-18 (emphasis added).

Email has become ubiquitous since *Rio Properties* was decided, reinforcing both its reasoning and its conclusion. As a result, courts now routinely conclude that email is reasonably calculated to give notice, typically when one or more of the following factors are present: (1) the foreign defendant does business on the Internet; (2) the foreign defendant relies on electronic communications to operate its business; (3) the foreign defendant does not

1   provide a physical address or provides a physical address that is unsuitable for service; and/or
2   (4) the foreign defendant evades personal service or makes personal service difficult. *See, e.g.,*
3   *Gucci America, Inc. v. Huoqing*, 2011 WL 31191, at *2-3 (N.D. Cal. Jan. 3, 2011) (noting that
4   court granted motion for email service on foreign defendant); *Gurung v. Malhotra*, 2011 WL
5   5920766, *1 (S.D.N.Y. Nov. 22, 2011) (same); *craigslist, Inc. v. Temple*, No. CV 09-04738
6   JW, Dkt. 21 (N.D. Cal. May 20, 2010) (authorizing email service on a Canadian defendant
7   who operated an Internet business); *craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09-
8   04741 JW, Dkt. 37 at 2 (N.D. Cal. Nov. 24, 2010) ("Here, service by email is reasonably
9   calculated to provide actual notice to Troopal, a Panamanian corporation, because it regularly
10  utilizes email in operating its business."); *Bank Julius Baer & Co. Ltd v. Wikileaks*, 2008 WL
11  413737, at *2 (N.D. Cal. Feb. 13, 2008) (authorizing email service); *Juniper Networks, Inc. v.
12  Bahattab*, 2008 WL 250584, at *2 (D.D.C. Jan. 30, 2008) (same); *Williams-Sonoma Inc. v.
13  Friendfinder, Inc.*, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (same).

14          Email service is appropriate in this case because all four factors are present.
15          *First*, the Foreign Subject Defendants are clearly involved in commercial Internet
16  activities. They intentionally registered domain names that are confusingly similar to
17  Facebook's trademark, FACEBOOK, *see, e.g.*, Spear Decl. ¶ 44, and used those domain names
18  to deceive Internet users and trade on Facebook's goodwill in the marketplace.
19          *Second*, the Foreign Subject Defendants relied and continue to rely on electronic
20  communications to conduct business. Defendants' typosquatting schemes depended on
21  electronic interactions with consumers who visited their deceptive and infringing websites. *See*
22  *generally* FAC. Moreover, all of the Foreign Subject Defendants were required to provide
23  email addresses to their registrars when registering their unlawful domain names. And
24  importantly, the Foreign Subject Defendants were required to promise that the email addresses
25  they provided were valid. *See supra* note 2.
26          *Third*, many of the Foreign Subject Defendants held out physical addresses that were
27  invalid or unsuitable for personal service, *see, e.g.*, *id.* ¶¶ 21, 72, 99-101, 157-59, and none of
28  the Foreign Subject Defendants responded to communications sent via registered mail. In

contrast, several of the Foreign Subject Defendants corresponded with Facebook's attorneys via email, strongly suggesting that email is the best way to contact the Foreign Subject Defendants. *See Vinigay.com*, 2011 WL 810250, at *4 ("Plaintiff has shown that because Defendants conduct business through the internet and have contacted Plaintiff's counsel via email, service through email will give Defendants sufficient notice and opportunity to respond."). And while Facebook is unaware of the true physical addresses of any of the Foreign Subject Defendants, Facebook has valid email addresses for all of them. *See, e.g.*, Spear Decl. ¶¶ 14, 94, 179.

*Fourth*, the Foreign Subject Defendants have frustrated efforts to serve them in a variety of ways. They have provided invalid physical addresses; used privacy-protection services to obscure their identities in the Whois records of their domain names; evaded Facebook's repeated attempts to serve them personally; and ignored Facebook's attempts to contact them via postal mail, email, and telephone. *See generally* Spear Decl.

In sum, the Foreign Subject Defendants have refused to acknowledge this lawsuit, hoping that Facebook (and the Court) will let them off the hook if they ignore it long enough. Their intransigence should not be rewarded. Because Facebook has been diligent and persistent in its efforts to contact and serve the Foreign Subject Defendants; because the Foreign Subject Defendants have resisted those efforts despite considerable evidence that they know about this lawsuit; and because email is reasonably calculated to give the Foreign Subject Defendants actual notice of this case, the Court should grant Facebook's motion and permit Facebook to serve the Foreign Subject Defendants via email. *See, e.g.*, *Rio Props.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process.").

**2. Service by email is not prohibited by any relevant international agreement.**

Based on the information presently available to Facebook, the Foreign Subject Defendants appear to reside in Anguilla (Intercontinental Domain, Inc.), Antigua (Pioneer Enterprises, Ltd.), Canada (Karrie-Lee Karreman, PPX.com, and Elise Petri),

Hong Kong (YourTick), Panama (Cleanser Products, Mackrooner Ltd. Inc., and Newgate Services/SMTM Enterprises Ltd.), and Thailand (Counter Balance Enterprises Ltd.). To Facebook's knowledge, no international agreement prohibits service by email in those countries.

### a. Email service is not prohibited in Anguilla, Antigua, Canada, and Hong Kong.

Anguilla, Antigua, Canada, and Hong Kong are all signatories to or bound by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ("Hague Service Convention"). *See* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Feb. 14, 2012) (listing Canada as a signatory); *Tracfone Wireless, Inc. v. Unlimited PCS Inc.*, 2012 WL 169762, *1-2 (S.D. Fla. Jan. 11, 2012) (Hong Kong is subject to the Convention).[3]

The Hague Service Convention does not expressly prohibit email service. *See, e.g.*, *Friendfinder, Inc.*, 2007 WL 1140639, at *2. In any event, the true addresses of Intercontinental Domain, Inc., Karrie-Lee Karreman, PPX.com, Elise Petri, Pioneer Enterprises, Ltd., and YourTick are unknown. *See* Spear Decl. ¶¶ 43, 58, 97, 113, 128, 155. As a result, the Hague Service Convention is inapplicable. *See* Hague Service Conv., art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."); *United States v. Distribuidora Batiz CGH, S.A. De C.V.*, 2011 WL 1561086, at *5 (S.D. Cal. Apr. 21, 2011) (same). Accordingly,

---

[3] Anguilla is an overseas territory of the United Kingdom, *see* U.S. Dep't of State, Anguilla Country Specific Information, http://travel.state.gov/travel/cis_pa_tw/cis/cis_1107.html#country (last visited Feb. 14, 2012), which is a signatory to the Hague Service Convention, *see* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Feb. 14, 2012). Antigua is an independent sovereign state within the British Commonwealth, *see* U.S. Dep't of State, Background Note: Antigua and Barbuda, http://www.state.gov/r/pa/ei/bgn/2336.htm (last visited Feb. 14, 2012), and is bound by the Hague Service Convention, *see* Hague Conf. on Private Int'l Law, Status Table 14, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Feb. 14, 2012).

service by email on the six Foreign Subject Defendants residing in Anguilla, Antigua, Canada, and Hong Kong is not prohibited by an international agreement.

### b. Email service is not prohibited in Panama.

Panama is a signatory to the Inter-American Convention on Letters Rogatory and Additional Protocol for the Service Abroad of Judicial and Extrajudicial Documents, O.A.S. Treaty Text B-36 (the "Inter-American Convention"). The Inter-American Convention does not prohibit service by email. *See Vinigay.com*, 2011 WL 810250, at *2 (the Inter-American Convention "regulates the transmittal of documents abroad and does not supplant all alternative methods of service") (internal quotation marks omitted). Accordingly, service by email on Cleanser Products, Mackrooner Ltd. Inc., and Newgate Services/SMTM Enterprises Ltd. is not prohibited by an international agreement. *See Troopal Strategies, Inc.*, No. CV-09-04741 JW, Dkt. 37 (authorizing service by email in Panama).

### c. Email service is not prohibited in Thailand.

"Thailand is not a signatory of the Hague Service Convention, thus it does not apply, nor are there any other agreements that would prohibit service via email." *craigslist, Inc. v. Meyer*, No. CV 09-4739 SI, Dkt. 29 at 3 (N.D. Cal. Jul. 26, 2010); *see also Igloo Products Corp. v. Thai Welltex Int. Co., LTD.*, 379 F. Supp. 2d 18, 20 (D. Mass. 2005) (authorizing service by mailing complaint and summons to defendant in Thailand). Accordingly, service by email on Counter Balance Enterprises Ltd. is not prohibited by an international agreement.

\* \* \*

In sum, email is reasonably calculated to give the Foreign Subject Defendants actual notice of this suit, and no international agreement bars email service on any of the Foreign Subject Defendants. The Court should therefore authorize Facebook to serve the Foreign Subject Defendants via the email addresses identified in the attached Proposed Order.

**B. The Court Should Allow Facebook to Serve the Domestic Subject Defendants by Email Under Federal Rule of Civil Procedure 4(e)(1)**

"[A]n individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general

1  jurisdiction in the state where the district court is located or where service is made." Fed. R.
2  Civ. P. 4(e)(1). As this Court is located in California, it may authorize service of process in
3  conformity with the California Code of Civil Procedure. Section 413.30 of the Code states that
4  "[w]here no provision is made in this chapter or other law for the service of summons, the
5  court in which the action is pending may direct that summons be served in a manner which is
6  reasonably calculated to give actual notice to the party to be served and that proof of such
7  service be made as prescribed by the court."

8        Service by email would be "reasonably calculated to provide actual notice" to the
9  Domestic Subject Defendants, as they—like the Foreign Subject Defendants—are all engaged
10 in Internet-based commercial activities and rely on email as a means of communication.
11 Moreover, there is no other provision in the Code that will be as effective in serving the
12 Domestic Subject Defendants as service by email. Despite multiple attempts, Facebook has
13 been unable to serve the Domestic Subject Defendants personally, *see* Spear Decl. ¶¶ 158-65
14 (Reggie Bush); *id*. ¶¶ 174-76 (Gilend API); *id*. ¶¶ 185-89 (Stormwest Corp.); *id*. ¶¶ 198-99
15 (Tomato, Inc.), and Facebook is currently unaware of the Domestic Subject Defendants' true
16 physical addresses, *see id*. ¶ 171, *id*. ¶ 182; *id*. ¶ 195; *id*. ¶ 205. Facebook's attempts to locate
17 and contact the Domestic Subject Defendants by postal mail and telephone have also failed.
18 Service by publication will likely be ineffectual and impractical, as Facebook is unaware of a
19 newspaper or other publication that is "likely to give actual notice" to the Domestic Subject
20 Defendants. *See* Cal. Code Civ. P. § 415.50(b).

21       Under these circumstances, service by email is the superior method for providing
22 actual notice to the Domestic Subject Defendants. *See, e.g.*, *Aevoe Corp. v. Pace*, 2011 WL
23 3904133, at *3 (N.D. Cal. Sep. 6, 2011) (authorizing service by email under California Code
24 of Civil Procedure § 413.30 and Federal Rule of Civil Procedure 4(e)(1) on Stanley Pace, a
25 defendant in this matter); *Collins v. Doe*, 2010 WL 4954727, at *1-2 (S.D. Tex. Nov. 30,
26 2010) (authorizing service by email under Texas Rule of Civil Procedure 106(b) and Federal
27 Rule of Civil Procedure 4(e)(1)); *Power Corp. of Canada v. Power Financial*, 2009 WL
28 982750, at *1-2 (M.D. Pa. Apr. 13, 2009) (authorizing service by email under Pennsylvania

Rule of Civil Procedure 430(a) and Federal Rule of Civil Procedure 4(e)(1)); *Tishman v. The Associated Press*, 2006 WL 288369, at *1-3 (S.D.N.Y. Feb. 6, 2006) (authorizing service by email under New York Rule of Civil Procedure 308(5) and Federal Rule of Civil Procedure 4(e)(1)); *D.R.I., Inc. v. Dennis*, 2004 WL 1237511, at *1-2 (S.D.N.Y. June 3, 2004) (same).

## IV. CONCLUSION

The Subject Defendants have managed to avoid service despite Facebook's diligent efforts to locate, contact, and serve them, and despite substantial evidence that they are fully aware of this lawsuit. Defendants' evasiveness has interfered with the progress of this litigation and imposed substantial costs on Facebook. Because email service is reasonably calculated to give the Subject Defendants actual notice of this lawsuit, the Court should permit Facebook to serve the Subject Defendants via the email addresses set forth in the attached Proposed Order.[4]

DATED: February 17, 2012

**PERKINS COIE LLP**

By: /s/ Ryan Spear
Ryan Spear, WSBA No. 39974
(*pro hac vice*)
RSpear@perkinscoie.com

Attorneys for Facebook, Inc.

---

[4] It is proper for the Court to authorize service on the Subject Defendants at the email addresses identified in the Proposed Order. Virtually all of those email addresses were provided by the Subject Defendants when registering their unlawful domain names. As noted above, registrants are required to provide accurate and up-to-date contact information to their domain name registrars. *See supra* note 2. In the one case where an email address provided to a registrar proved invalid, Facebook identified a valid email address through additional investigation. *See* Spear Decl. ¶¶ 107-08.